UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:17-cv-20459-JLK

DESIREE MARENGO,
individually and on behalf of all
others similarly situated,                                CLASS ACTION

      Plaintiff,                                     JURY TRIAL DEMANDED

v.

MIAMI RESEARCH ASSOCIATES, LLC,
d/b/a QPS MIAMI RESEARCH ASSOCIATES,
a Florida corporation,

      Defendant.
_____/


**PLAINTIFF'S AND CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR SERVICE AWARD, ATTORNEYS' FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. IV

I. INTRODUCTION ...................................................................................... 1

II. SUMMARY OF THE LITIGATION, MEDIATION, & SETTLEMENT ...................... 4

III. SETTLEMENT TERMS ............................................................................... 5

    A. The Settlement Class ....................................................................... 5

    B. Monetary Relief .............................................................................. 6

    C. Class Release .................................................................................. 7

    D. Settlement Notice ............................................................................ 7

    E. Settlement Termination .................................................................... 7

    F. Service Award ................................................................................. 7

    G. Attorneys' Fees and Costs ............................................................... 8

IV. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ........................... 8

    A. The Court Has Personal Jurisdiction Over the Settlement Class Because the Settlement Class Received Adequate Notice and an Opportunity to Be Heard. ............................................................................................. 9

        1. The Best Notice Practicable Was Furnished ................................. 9

        2. The Notice and Notice Program Were Reasonably Calculated to Inform the Settlement Class of Their Rights. ........ 10

    B. The Settlement Should Be Approved as Fair, Adequate and Reasonable. ............. 11

        1. The Settlement Was the Result of Arm's-Length Negotiation Between the Parties with the Assistance of an Experienced Mediator. ...................................................... 12

        2. The Settlement Satisfies Each of the *Bennett* Factors. ................. 13

V. APPLICATION FOR SERVICE AWARD ...................................................... 17

VI. APPLICATION FOR ATTORNEYS' FEES AND EXPENSES ................................ 19

    A. The Law Awards Class Counsel Fees From the Common Fund Created Through Their Efforts. ................................................................... 19

        1. The Claims Against Defendant Required Substantial Time and Labor. ................................................................................. 22

        2. The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys. ..................... 22

        3. Class Counsel Achieved a Successful Result. ............................. 23

        4. The Claims Presented Serious Risk. ......................................... 24

5.      Class Counsel Assumed Considerable Risk to Pursue This
        Action on a Pure Contingency Basis. ......................................... 25

6.      The Requested Fee Comports with Fees Awarded in
        Similar Cases. ............................................................................ 26

7.      The Expense Request Is Appropriate ......................................... 29

VII.    CONCLUSION ........................................................................................... 29

## **TABLE OF AUTHORITIES**

**CASES**

*ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*,
No. 15-CV-23142-KMV [DE 123] (S.D. Fla. April 11, 2017) ................................................ 28

*Access Now, Inc. v. Claire's Stores, Inc.*, 00-cv-14017,
2002 WL 1162422 (S.D. Fla. May 7, 2002) ........................................................................ 16

*Adams v. AllianceOne Receivables Management, Inc.*,
3:08-cv-00248 [DE 137] (S.D. California) .......................................................................... 23

*Agne v. Papa John's International, et al.*,
2:10-cv-01139 [DE 389] (W.D. Washington) ...................................................................... 23

*Allapattah Servs., Inc. v. Exxon Corp.*,
91-cv-0986, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ................................................ *passim*

*Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*,
480 F. Supp. 1195 (S.D.N.Y. 1979) .................................................................................. 27

*Bellows v. NCO Financial Systems, Inc.*,
3:07-cv-01413 [DEs 38,42] (S.D. California) ...................................................................... 23

*Bennett v. Behring Corp.*,
737 F.2d 982, 986 (11th Cir. 1984) .............................................................................. 11, 12

*Blum v. Stenson*,
465 U.S. 886 (1984) ...................................................................................................... 28

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................................. 19, 20

*Camden I Condo. Ass'n. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ........................................................................ 19, 20, 21, 26

*CE Design Ltd. v. Cy's Crab House N., Inc.*,
1:07-cv- 05456 [DE 424] (N.D. Ill. Oct. 27, 2011) ............................................................ 29

*Clark v. Payless ShoeSource, Inc.*,
2:09-cv-00915 [DEs 61, 72] (W.D. Wash.) ........................................................................ 23

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ........................................................................................ 18

*Cooper v. Nelnet, Inc.*, No. 6:14-cv-314-Orl-37DAB,
2015 U.S. Dist. LEXIS 100350 (M.D. Fla. July 31, 2015) .................................................. 25

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ........................................................................................ 15

*Cubbage v. The Talbots, Inc. et al.*,
2:09-cv-00911 [DE 114] (W.D. Wash.) .............................................................................. 23

*Cummings v Sallie Mae*,
12 C-9984 [DE 91] (N.D. Ill. May 30, 2014) .......................................................................... 29

*David v. American Suzuki Motor Corp.*,
2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ......................................................................... 17

*De Los Santos v. Millward Brown Inc.*,
13-cv-80670-DPG [DE 84] (S.D. Fla. 2015)........................................................................... 28

*Deposit Guar. Nat'l Bank v. Rope*,
445 U.S. 3269 (1980)............................................................................................................... 20

*Desai v. ADT Sec. Servs., Inc.*,
1:11-cv-01925 [DEs 240, 243] (N.D. Ill. June 21, 2013) ................................................ 23, 29

*Enter. Energy Corp. v. Columbia Gas Transmission*,
137 F.R.D. 240 (S.D. Ohio 1991)........................................................................................... 19

*Figueroa v. Sharper Image Corp.*,
517 F. Supp. 2d 1292 (S.D. Fla. 2007) ............................................................................. 13, 14

*Francisco v. Numismatic Guar. Corp.*,
No. 06-61677, 2007 U.S. Dist. LEXIS 96618 (S.D. Fla. Jan. 30, 2007) ............................... 25

*Fresco v. Auto. Directions, Inc.*,
No. 03-CIV-61063-MARTINE, 2009 WL 9054828 (S.D. Fla. Jan. 20, 2009) ...................... 14

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
1:07-cv-05953 [DE 146] (N.D. Ill. Nov. 1, 2010) .................................................................. 29

*Garret, et al. v. Sharps Compliance, Inc.*,
1:10-cv-04030 [DE 74] (N.D. Illinois) ................................................................................... 23

*Gaskill v. Gordon*,
942 F. Supp. 382 (N.D. Ill. 1996) ........................................................................................... 27

*Gevaerts v. TD Bank, N.A.*,
No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015) ............... 27

*Gottlieb v. Citgo Petroleum Corp.*,
No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382 (S.D. Fla. Nov. 29, 2017) ................ 26, 28

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
2015 WL 13650934 .................................................................................................................. 28

Gutter v. E.I. Dupont De Nemours & Co.,
95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) .......................... 27

*Hanley v. Fifth Third Bank*,
1:12-cv-01612 [DE 86] (N.D. Ill. Dec. 23, 2013)................................................................... 29

*Hovila v. Tween Brands, Inc.*,
2:09-cv-00491 [DE 12] (W.D. Wash.)..................................................................................... 23

*In re Ampicillin Antitrust Litig.*,
526 F. Supp. 494 (D.D.C. 1981) ........................................................................................ 27

*In re Capital One Tel. Consumer Prot. Act Litig*,
2015 U.S. Dist. LEXIS 17120 (N.D. Ill. Feb. 12, 2015) ................................................... 28

*In re Checking Acc't Overdraft Litig.*,
830 F. Supp.2d 1330 (S.D. Fla. 2011) .............................................................................. 25

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 654 (S.D. Fla. 2011) ....................................................................................... 13

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. Unit B 1982).................................................................................... 8

*In re Continental Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...................................................................................... 26, 27

*In re Crazy Eddie Sec. Litig.*,
824 F. Supp. 320 (E.D.N.Y. 1993) .................................................................................... 27

*In re Gould Sec. Litig.*,
727 F. Supp. 1201 (N.D. Ill. 1989) ................................................................................... 19

*In re Jiffy Lube International, Inc. Text Spam Litig.*,
3:11-MD-02261 [DEs 90-1, 97](S.D. Cal.) ...................................................................... 23

*In re Lease Oil Antitrust Litig.*,
186 F.R.D. 403 (S.D. Tex. 1999) ...................................................................................... 27

*In re Lorazepam & Clorazepate Antitrust Litig.*,
MDL No. 1290, 2003 WL 22037741 (D.D.C. June 16, 2003) ......................................... 12

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977) ..................................................................................... 9, 11

*In re Public Serv. Co. of N.M.*,
1992 WL 278452 (S.D. Cal. July 28, 1992) ..................................................................... 28

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
148 F.3d 283 (3d Cir. 1998)................................................................................................. 9

*In re Shell Oil Refinery*,
155 F.R.D. 552 (E.D.La.1993)........................................................................................... 16

*In re Sunbeam Sec. Litig.*,
176 F. Supp.2d 1323 ......................................................................................................... 25

*In re: Managed Care Litig. v. Aetna*,
MDL No. 1334 U.S. Dist. WL 22850070 (S.D. Fla. Oct. 24, 2003) ................................. 27

*In re: Terazosin Hydrochloride Antitrust Litigation*,
99-1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. April 19, 2005) ...................... 27

*Ingram v. The Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) .................................................................................... 12, 18

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ................................................................................................ 9

*James v. JPMorgan Chase Bank, N.A.*,
8:15-cv-2424-T-23JSS, 2017 U.S. Dist. LEXIS 91448 (M.D. Fla. June 5, 2017) .................... 29

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) .............................................................................................. 21

*Kazemi v. Payless ShoeSource, Inc. et al.*,
3:09-cv-05142 [DE 94] (N.D. Cal.) ...................................................................................... 23

*Kirchoff v. Flynn*,
786 F.2d 320, 323 (7th Cir. 1986) ....................................................................................... 28

*Kwan v. Clearwire Corp.*,
2:09-cv-01392 [DE 201] (W.D. Wash.) ................................................................................ 23

*Legg v. Laboratory Corp. of America*,
14-cv-61543-RLR [DE 227] (S.D. Fla. Feb. 18, 2016) .......................................................... 27

*Lemieux v. Global Credit & Collection Corp.*,
3:08-cv-01012 [DE 46] (S.D. Cal.) ...................................................................................... 23

*Leverso v. Southtrust Bank*, 1
8 F.3d 1527 (11th Cir. 1994) ........................................................................................ 11, 12

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*
540 F.2d 102 (3d Cir. 1976) ............................................................................................... 25

*Lipuma v. American Exprress Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) .................................................................... 13, 14, 15, 16

*Malta v. Freddie Mac & Wells Fargo Home Mortgage*,
3:10-cv-01290 [DE 91] (S.D. Cal.) ...................................................................................... 23

*Martin v. Dun & Bradstreet, Inc. et al*,
1:12-cv-00215 [DE 63] (N.D. Ill. Jan. 16, 2014) ................................................................... 29

*Mashburn v. National Healthcare, Inc.*,
684 F. Supp. 679 (M.D. Ala. 1988) ...................................................................................... 20

*Matthew Benzion v. Vivint, Inc.*,
12-61826-CIV-ZLOCH [DE 201] (S.D. Fla. 2015) ................................................................. 28

*Muehler v. Land O'Lakes, Inc.*,
617 F. Supp. 1370 (D. Minn. 1985) ..................................................................................... 20

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ..................................................................................................... 9, 11

*Paldo Sign and Display Company v. Topsail Sportswear*,
1:08-cv-05959 [DE 116] (N.D. Illinois) ............................................................... 23, 29

*Perez v. Asurion Corp.*,
501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..................................................... 13, 14, 15, 16

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ............................................................................................... 9, 11

*Pinto v. Princess Cruise Lines, Ltd.*,
513 F. Supp.2d 1334 (S.D. Fla. 2007). ........................................................................ 25

*Rankin v. Rots*,
2006 WL 1876538 (E.D. Mich. June 28, 2006) ............................................................ 8

*RJR Nabisco, Inc. Sec. Litig.*,
Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ................................................. 28

*Sarabi v. Weltman, Weinberg & Reis Co.*,
3:10-cv-01777 [DE 42] (S.D. Cal.) .............................................................................. 23

*Spicer v. Chicago Bd. Options Exchange, Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993) ............................................................................. 18

*Spillman v. RPM Pizza, LLC*, Case
No. 3:10-cv-00349 [DEs 244, 245] (M.D. Louisiana) ................................................ 23

*Stallworth v. Monsanto Co.*,
No. PCA 73-45. 198) U.S. Dist. LEXIS 12858 (N.D. Fla. June 26, 1980) ................ 18

*Steinfeld, et al. v. Discover Financial Services, et al.*,
3:12-cv-01118 [DE 65] (N.D. Cal.) .............................................................................. 23

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ................................................................................... 27

*Wojcik v. Buffalo Bills, Inc.*,
8:12-cv-02414 [DE 77] (M.D. Fla.) .............................................................................. 23

*Wolff v. Cash 4 Titles*,
03-22778- CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ................................... 27

*Zerkle v. Cleveland-Cliffs Iron Co.*,
52 F.R.D. 151 (S.D.N.Y. 1971) ..................................................................................... 8

## OTHER AUTHORITIES

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) .................... 12

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (July 10, 2015) ............................................................................................................................. 24

*Manual for Complex Litigation (Third)* § 30.42 (1995) ................................................. 12

*Newberg on Class Actions*, § 14:6, at 551 (4th ed. 2002)........................................... 27

## I.      INTRODUCTION

During the course of litigation involving TCPA claims asserted by Plaintiff on behalf of approximately 9,500 consumers who received automated text message(s) advertisements Defendant Miami Research Associates, LLC ("MRA"), Plaintiff, and Class Counsel negotiated the Settlement Agreement and Release, [DE 43-1] ("Agreement" or "Settlement").[1]   The Settlement – which consists of MRA's agreement to pay $130 for each valid claim submission and will make available up to $1,236,300.00 to pay valid claim submissions, including $390,000 for fees and costs associated with the Notice Program and Settlement Administration – is a very good result for the Settlement Class given the circumstances, including the Defendant's financial condition.   Based on the controlling legal standards and supporting facts, the Settlement is fair, adequate and reasonable.

Plaintiff and Class Counsel now seek Final Approval of the Settlement.   Class Counsel also request that the Court award a Service Award to the Class Representative, whose willingness to represent the Settlement Class and participation in the Action helped make the Settlement possible. Finally, Class Counsel request that the Court award attorneys' fees and approve the reimbursement of certain expenses incurred in prosecuting the Action.

Plaintiff Desiree Marengo alleges that in January 2017 she received three automated text message advertisements on her cellular telephone from MRA. [DE 1¶ 25]. On February 5, 2017, Ms. Marengo filed a class action complaint against Defendant MRA alleging that MRA violated the TCPA, a federal privacy statute which affords consumers a private right of action, seeking statutory damages for the Class.

---

[1] All capitalized terms used herein have the same meanings as those defined in the Agreement.

The Agreement was negotiated over the course of a full day court-ordered mediation conducted by mediator Rodney Max. Plaintiff and Class Counsel investigated the facts and law underlying the claims asserted in the Action. Plaintiff's Counsel also engaged in numerous discussions with Defendant's counsel regarding the claims. Defendant continues to deny all material allegations and claims asserted in the Action and the Complaint, and it denies all allegations of wrongdoing and liability. Defendant further contends that the Action is not amenable to class certification and that Plaintiff and the class that it seeks to represent are not entitled to any form of damages or relief. In addition, Defendant maintains that it has meritorious defenses to all claims alleged in the Action and it is prepared to defend the Action. Only because of the risks, uncertainties, burden and expense of continued litigation, and not as an admission of any guilt, does Defendant desire to settle the Action on the terms set forth herein.

Plaintiff and her counsel believe that the claims asserted in the Action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation and any subsequent appeal, Plaintiff and her counsel believe that it is desirable that the Action be fully and finally compromised, settled and terminated now with prejudice, and forever barred pursuant to the terms and conditions set forth in the Settlement Agreement. Plaintiff and her counsel have concluded that the terms and conditions of the Settlement Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action. The Agreement is the result of extensive mediation and negotiations.

The Agreement provides, *inter alia*, for a Settlement Fund requiring Defendant to pay $130.00 per text message to Settlement Class members who submit Claims and potential awards of attorneys' fees and incentive awards to the named Plaintiff, as well as injunctive relief. The

Settlement requires Defendant to make available up to $1,236,300 to pay timely valid claim submissions.  The parties created a website and notice was sent by U.S. mail to those class members for whom mailing addresses could be determined.  The Agreement provides for a release of claims as set forth therein.

Plaintiff submitted the proposed Agreement [DE 43-1], and it was determined by the Court that is fair and within the range of similar TCPA class action settlements given Defendant's financial circumstances as was outlined in the Motion for Preliminary Approval of Class Action Settlement [DE 43]. The Agreement provides relief to the Settlement Class where their recovery, if any, would otherwise be uncertain, especially given Defendant's willingness to continue its vigorous defense of the case.  The Agreement was reached only after written discovery and extensive arms-length negotiations.  For these reasons, and as further discussed below, Plaintiff requests the Court's final approval of the Agreement.

On December 18, 2017, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval of the Settlement [DE 44].

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint the Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in paragraph J. of the Agreement; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees and reimbursement of certain expenses; and (7) enter Final Judgment dismissing the Action with prejudice.

## II.      SUMMARY OF THE LITIGATION, MEDIATION, & SETTLEMENT

On or about February 5, 2017, Plaintiff filed her Complaint in the United States District Court for the Southern District of Florida alleging that Defendant improperly sent text messages in violation of the TCPA. [DE 1]. Plaintiff alleged that she and members of the class received text messages from MRA without prior express consent or express written consent, which harmed her and the class (the "Allegations"). Plaintiff sought damages under the TCPA on behalf of herself and the proposed class.

On March 22, 2017, Defendant filed an Answer and Affirmative Defenses in response to Plaintiff's Complaint. [DE 10]. On June 8, 2017, the Court entered a scheduling order and discovery commenced shortly thereafter. Plaintiff served Requests for Production, Requests for Admissions, and Interrogatories on Defendant. Defendant responded to the written discovery and produced hundreds of pages of documents. Thereafter, the parties met and conferred several times concerning Plaintiff's contention that Defendant's document production was deficient. Plaintiff ultimately moved to compel discovery [DE 25]. Defendant opposed the motion [DE 29] and Plaintiff filed a reply in support of the motion [DE 30] which concluded the parties' briefing. The Court set a hearing on the motion to compel for October 2, 2017. The parties requested and obtained a continuance of the hearing on the motion to compel to afford an opportunity to attend court-ordered mediation.

The parties attended mediation on October 25, 2017, in which they reached an agreement in principle to settle the litigated claims in this action on a class-wide basis, subject to Court approval.

The Parties worked diligently to draft and finalize a written settlement agreement. On December 15, 2017, Plaintiff and Class Counsel filed their Motion for Preliminary Approval. [DE

43].   December 18, 2017, the Court entered the Preliminary Approval Order that, *inter alia*, directed the Notice be given to the Settlement Class and established deadlines for the filing of the Motion for Final Approval, the timely submission or objections or requests for exclusions, and set a date for the Final Approval Hearing. [DE 44].

Although Defendant denies any liability or wrongdoing related to this Action, Defendant sought to attend court-ordered mediation early because of its limited financial resources. Declaration of Manuel Hiraldo Supporting Motion for Final Approval, attached as **Exhibit A** ("Hiraldo Decl."), ¶ 14. Defendant would suffer millions of dollars in damages if it were exposed to full statutory damages under the TCPA. Hiraldo Decl., ¶ 16. The Settlement Fund is significant given Defendant's limited financial resources. *Id*. Defendant's willingness to make such a significant amount available to the Settlement Class supports a finding that the Agreement is a just and fair resolution of the claims in this litigation.

## III.   SETTLEMENT TERMS

The Settlement terms are detailed in the Agreement attached.  The following is a summary of its material terms.

### A.   The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The Settlement Class is defined as:

> All persons (i) identified in the Settlement Class List (ii) who received a text message from MRA relating to the bird flu vaccine study ("flu study") (iii) between June 1, 2016 and February 1, 2017.

This class specifically excludes persons in the following categories: (A) individuals who are or were during the Class Period officers or directors of Miami Research Associates, LLC ("MRA") or any of its respective affiliates; (B) the district judge and magistrate judge presiding over this case, the judges of the United States Court of Appeals for the Eleventh Circuit, their

spouses, and persons within the third degree of relationship to either of them; and (C) all persons who file a timely and proper request to be excluded from the Settlement Class in accordance with Section III(D) of the Agreement. Agreement ¶ GG and Preliminary Approval Order [DE 44], ¶ 6.

### B. Monetary Relief

The Settlement required MRA to pay $130 for each valid claim submission and made available up to $1,236,300.00 to pay valid claim submissions.

The Settlement Fund will be used to: (i) distribute Settlement Fund Payments to Settlement Class Claimants; (ii) pay any Court-ordered attorneys' fees and costs awarded to Class Counsel; (iii) pay any Court-ordered Service Award to the Plaintiff; and (iv) pay any costs of the Notice Administrator and Settlement Administration. Agreement ¶ JJ.

In order to receive a portion of the Settlement Fund, Settlement Class members are required to complete a paper Claim Form.  Claim Forms were mailed by U.S. Mail to each Settlement Class member and are available on the Settlement Website.  Each Settlement Class member who timely files a valid Claim Form shall become a Settlement Class Claimant and thereafter automatically receive a Settlement Fund Payment payable by check.  As of February 28, 2018, the Settlement Administrator has received a total of 1,738 valid Claim Forms.

Settlement Class Claimants will be sent their Settlement Fund Payments to the address they submitted on their Claim Form no later than 60 days following the Effective Date. Agreement Section II(B)(1).

Checks will be valid for one hundred twenty (120) days from the date on the check. Any money that has not been distributed due to uncashed checks shall be returned to the Settlement Fund to be used to defray Notice and Administrative Costs.

Except as provided in this Section and any Class Representative Incentive Payment that the Court awards to Plaintiff, MRA shall have no obligation to make any other or further payments to Plaintiff or any Settlement Class Members.

### C.    Class Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released MRA from claims related to the subject matter of the Action.  The detailed release language is found in Section V of the Agreement.

### D.    Settlement Notice

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information MRA had available about Settlement Class members. Agreement Section III(B).  MRA has agreed to pay the fees and costs associated with the Notice and Settlement Administration.  *Id.* at ¶ III(A).  The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement.  *See* Lehrman Decl. ¶ 22.  The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

### E.    Settlement Termination

Either Party may terminate the Settlement if it is rejected or materially modified by the Court or an appellate court.  Agreement Section III(H).

### F.    Service Award

Class Counsel are entitled to request, and MRA will not oppose, a Service Award of $7,500 for the Class Representative, Desiree Marengo.  Agreement Section II(D)(2).  If the Court approves

it, the Service Award will be paid from the Settlement Fund and will be in addition to any other relief to which the Class Representative is entitled as a Settlement Class Member. *Id.* The Service Award will compensate Class Representative Marengo for her time and effort in the Action, and for the risks she undertook in prosecuting the Action against MRA. Lehrman Decl. ¶ 23.

### G. Attorneys' Fees and Costs

Class Counsel will petition the Court for an award of reasonable attorneys' fees plus expenses not to exceed Three Hundred Ninety Thousand Dollars ($390,000.00), to be paid by MRA from the Settlement Fund. This award shall be Class Counsel's total recovery for attorneys' fees, costs, and/or adequately supported expenses of any kind (including, but not limited to, mediation fees, filing fees and production costs). Agreement Section III(D). The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all other material terms of the Settlement. Agreement ¶ 24; Declaration of Seth Lehrman ("Lehrman Decl."), **Exhibit B**, ¶ 24.

## IV. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006) (quoting *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)). Indeed, "[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably

resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

> **A.      The Court Has Personal Jurisdiction Over the Settlement Class Because the Settlement Class Received Adequate Notice and an Opportunity to Be Heard**.

In addition to having personal jurisdiction over the Plaintiff, who is a party to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).

> **1.      The Best Notice Practicable Was Furnished.**

The Notice Program was comprised of three parts: (1) direct mail postcard notice ("Mailed Notice") to all identifiable Settlement Class members; (2) publication in the event mailing address information is not obtained for fifty (50) percent of the Settlement Class Members, the Administrator will supplement Mail Notice by publishing Class Notice in publication(s) to be agreed upon by the Parties; and (3) a Settlement Website which provides access to the Long-Form Notice, Agreement, Claim Form, and other documents. Agreement, III(B)4.

Each facet of the Notice Program was timely and properly accomplished. *See* Walitsky Declaration, attached as **Exhibit C, ¶¶** 5 - 12. The Administrator received Settlement Class List in electronic format from MRA which contained 9,510 phone number. *Id.*, ¶ 6. The Administrator used two reverse look-up databases to search the Settlement Class Members' telephone numbers.

*Id.*, ¶¶ 7 – 8. Through this reverse look-up search, the Administrator determined the mailing addresses associated with 8,263 Settlement Class Members, representing 86.9% of the Settlement Class and mailed postcards to each of these Settlement Class members *Id.* at ¶ 8.

For any Mail Notices returned as undeliverable, the Administrator utilized the National Change of Address database (the "NCOA") and/or skip-tracing in an attempt to obtain better addresses for such returned Mail Notices, and when the NCOA or skip-tracing show a more current address, the Administrator posted the returned Mail Notice to the more current address. *Id.* at 11. Mail Notice was delivered to approximately 86.9% of the Settlement Class. *Id.* at ¶ 9.

The Notice Administrator also established the Settlement Website, http://www.mrasettlement.com, which went live on January 16, 2018. *Id.* at ¶12. The Long Form Notice, along with other key pleadings, have been and will continue to be available on the Settlement Website or upon request to the Settlement Administrator, to enable Settlement Class members to obtain detailed information about the Action and the Settlement. *Id.* ¶¶ 12-13. As of February 23, 2018, the Settlement Website had 2,469 unique visitors with a total of 6,057 page views. *Id.* at ¶ 13. In addition, a toll-free number, 877-235-4599, was established and has been operational since January 16, 2018. *Id.* at ¶ 14. By calling, Settlement Class members are able listen to answers to frequently asked questions and request a copy of the Long Form Notice. *Id.* As of February 23, 2018, the toll-free number had handled 227 calls for a total of 901 IVR minutes. *Id.* at ¶ 15.

## 2. The Notice and Notice Program Were Reasonably Calculated to Inform the Settlement Class of Their Rights.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In*

*re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05.  The Notice, among other things, defined the Settlement Class, described the release provided to MRA under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing.  It also notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents.  Further, the Notice described Class Counsel's attorneys' fees and reasonable expenses approved by the Court not to exceed $390,000, and an Incentive Payment for Plaintiff approved by the Court not to exceed $7,500.  Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15); *see* Walitsky Decl. ¶¶ 6 - 13.

As of February 28, 2018, the Settlement Administrator had received no requests for exclusion and no objections to the Settlement had been filed. Walitsky Decl. ¶ 18 and Lehrman Decl. ¶ 25.  The opt-out and objection period end on March 17, 2018.

### B.   The Settlement Should Be Approved as Fair, Adequate and Reasonable.[2]

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam &*

---

[2] As of February 23, 2018, there have been no objections to the Settlement.  In the event any timely objections are submitted Class Counsel will file a response.

*Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003)

(quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).  Importantly, the Court is "not

called upon to determine whether the settlement reached by the parties is the best possible deal,

nor whether class members will receive as much from a settlement as they might have recovered

from victory at trial."  *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill.

2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness,

reasonableness and adequacy of a class settlement under Rule 23(e):

> (1)  the existence of fraud or collusion behind the settlement;
>
> (2)  the complexity, expense, and likely duration of the litigation;
>
> (3)  the stage of the proceedings and the amount of discovery completed;
>
> (4)  the probability of the plaintiffs' success on the merits;
>
> (5)  the range of possible recovery; and
>
> (6)  the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors set

forth below shows this Settlement to be eminently fair, adequate and reasonable.

### 1.    The Settlement Was the Result of Arm's-Length Negotiation Between the Parties with the Assistance of an Experienced Mediator.

The context in which the Settlement was reached confirms that it was the result of arm's-

length and informed negotiations as opposed to collusion among the parties. The Settlement was

reached only after mediation facilitated by a highly experienced and well-respected neutral,

Rodney Max. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact

that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. at 662 (finding an absence of collusion where settlement was reached with capable and experienced counsel with the assistance of a well- qualified and experienced mediator). Moreover, the Parties agreed on the terms of the Settlement through experienced counsel, who had at their disposal both prior to the mediation sessions and during subsequent negotiations ample information to evaluate the terms of any proposed agreement so as to reach a fair and reasonable compromise. As such, it is clear that the Settlement was the result of arm's-length and informed negotiation between the Parties, and given that, this Court should not hesitate to approve it.

### 2.    The Settlement Satisfies Each of the *Bennett* Factors.

In addition to being the result of arm's-length negotiations free from fraud or collusion, the Settlement here also satisfies each of the *Bennett* factors.  While the Eleventh Circuit instructs district courts to consider the *Bennett* factors, "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007) "Rather, the court must rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel." *Id*.  Here, as explained below, each of the *Bennett* factors weighs in favor of approving the Settlement Agreement.

### a.   *Likelihood of Success at Trial*

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial.  "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp. 2d at 1319; s*ee also Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323-24 (S.D. Fla. 2007).  Where success at trial is not certain for plaintiffs, this factor weighs in favor of approving

13

the settlement.  *See Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063-MARTINE, 2009 WL 9054828, at *4 (S.D. Fla. Jan. 20, 2009); *Perez*, 501 F. Supp. 2d at 1380.  Defendant has asserted numerous defenses, including that it had obtained prior express consent to send the subject texts and that an automatic telephone dialing system was not used.  If Defendant proves either defense, then Plaintiff and the class will recover nothing.  Although Plaintiff's TCPA claim has proceeded beyond the pleadings stage, ultimate success at trial is far from guaranteed.

Further, and notwithstanding the strength of this case, Plaintiff recognizes that the expense, duration, and complexity of protracted litigation would be substantial and require further briefing on numerous substantive issues, evidentiary hearings, and further discovery. Against the inherent uncertainty raised by these issues is the concrete nature of the relief afforded under the Settlement, where Settlement Class Members who submit a valid and timely claim form will recover a direct cash payment. Because ultimate success at trial is far from certain, and the value of the Settlement is unquestionably strong in comparison, the first *Bennett* factor weighs in favor of approving the Settlement.

> **b.  *Range of Possible Recovery and Point at which Settlement is Fair, Reasonable, and Adequate***

Analysis of the second and third *Bennett* factors—the range of possible recovery and the point on or below the range at which a settlement is fair, adequate and reasonable—is often combined.  *In re Sunbeam*, 176 F. Supp. 2d at 1331.  As in most litigation, "[t]he range of potential recovery spans from a finding of non-liability through varying levels of injunctive relief, in addition to any monetary benefits to class members."  *Figueroa*, 517 F. Supp. 2d at 1326 (citing *Lipuma*, 406 F. Supp. 2d at 1322) (internal quotation omitted).  However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality."  *Figueroa*, 517 F. Supp. 2d at 1326

The TCPA limits damages to $500 per violation. If the court finds that the defendant willfully or knowingly violated the TCPA, the court may, in its discretion, increase the amount of the award to an amount equal to not more than $1500. 47 U.S.C. § 227(b)(3). The risk that Plaintiff and the Settlement Class would receive a smaller judgment than the settlement was (appropriately) a significant factor in the decision to settle.  There are 1,738 members of the Class who submitted a valid claim and will receive from the Settlement Fund a check for $130. Walitsky Decl. ¶ 17. The Settlement is consistent with other actions of this type and, considering the circumstances, is fair, adequate and reasonable.  Thus, the second and third *Bennett* factors weigh in favor of approval.

### c.   *Complexity, Expense, and Duration of Litigation*

The next *Bennett* factor to consider is the complexity, expense, and duration of litigation. As the Eleventh Circuit has noted, "settlements contribute greatly to the efficient utilization of our scarce judicial resources."  *Cotton*, 559 F.2d at 1331 "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp. 2d at 1381.  In evaluating this *Bennett* factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp. 2d at 1323.  Here, this factor weighs in favor of approving the Settlement Agreement.

In the absence of the Settlement, it is certain that the expense and duration of protracted litigation would be substantial. If the Court were to grant class certification or a dispositive motion in either party's favor, given the history of this litigation, the losing side would likely seek relief from the Eleventh Circuit. In either case, continued litigation of this matter would delay its

resolution and inflict unnecessary additional expense on both sides.  Where unnecessary additional

costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the

hand instead of a prospective flock in the bush."  *Lipuma*, 406 F. Supp. 2d at 1323 (quoting *In re*

*Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D.La.1993)).  *See also Perez*, 501 F. Supp. 2d at 1381

("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays

and complexities presented by the nature of the case, the benefits of a settlement are clear.").  Thus,

the complexity, expense, and duration of litigation thus weigh in favor of approving the Parties'

settlement.

### d.  *Substance and Amount of Opposition to Settlement*

The next *Bennett* factor to consider is the substance and amount of opposition to the

settlement.  Here, the Court-approved notice plan prompted zero requests for exclusion and no

objections.  The fact there are no objections demonstrates that class members find the agreement

reasonable and fair, and strongly favors approval of the settlement.  *See Lipuma*, 406 F. Supp. 2d

at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and

supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-0986, 2006 WL

1132371, at *13 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of

objections that the majority of the Class found [the settlement agreement] reasonable and fair.").

Accordingly, the clear lack of opposition weighs heavily in favor of final approval.

### e.  *Stage of Proceedings at which Settlement Achieved*

The final *Bennett* factor looks to the stage of proceedings at which the settlement was

achieved.  Courts look at this factor "to ensure that the plaintiffs have access to sufficient

information to adequately evaluate the merits of the case and weigh the benefits of the settlement

against further litigation."  *Perez*, 501 F. Supp. 2d at 1383; *see also Access Now, Inc. v. Claire's*

16

*Stores, Inc.*, 00-cv-14017, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F. Supp. 2d at 13328 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof.  This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.").

Here, the Settlement Agreement was not reached until the Parties had engaged in motion practice and written discovery. Plaintiff ultimately determined that she was provided with sufficient information about the text messages at issue, the size of the Settlement Class, and the range of the Class's potential damages—all *before* completing the mediation process and agreeing to this Settlement.

Hence, there should be no question that, by the time the Settlement was reached, Plaintiffs had enough information to sufficiently evaluate the strength of the claims of the Settlement Class and weigh the benefits of Settlement against continued litigation.  The stage of proceedings factor thus weighs in favor of approval as well.

## V.      APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for the Class Representative in the amount of $7,500.  Agreement Section II(D)(2).  Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006).  "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).  Courts

have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives.  *See, e.g.*, *Stallworth v. Monsanto Co.*, No. PCA 73-45. 198) U.S. Dist. LEXIS 12858, at *20-21 (N.D. Fla. June 26, 1980) (approving service awards ranging from $10,000 to $20,000 to four named plaintiffs, "each of whom devoted substantial time to the prosecution of th[e] lawsuit"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation.  *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff.  Hiraldo Decl. ¶ 19. Plaintiff provided substantial assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement, and locating and forwarding responsive documents and information.  Plaintiff was also prepared to devote additional time to deposition and to be available for trial, if necessary.  In so doing, Plaintiff was integral to forming the theory of the case and litigating it through settlement.  Hiraldo Decl. ¶ 20.

Plaintiff not only devoted time and effort to the litigation, but the end result of her efforts, coupled with those of Class Counsel, provided a substantial benefit to the Settlement Class.

18

Hiraldo Decl. ¶ 21.  The Service Award of $7,500 is less than 0.006% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable.  *Id.*; s*ee, e.g.*, *Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement).  The Service Award requested here is reasonable.

## VI.   APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees plus expenses not to exceed Three Hundred Ninety Thousand Dollars ($390,000.00), to be paid by MRA from the Settlement Fund.  Lehrman Decl. ¶ 26.  Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms.  *Id.* ¶ 24. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).  For the reasons detailed herein, Class Counsel submit that the requested fee is appropriate, fair and reasonable and respectfully requests that it be approved by the Court.

### A.   The Law Awards Class Counsel Fees From the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained.  *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs.  The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D.

Ill. 1989) (citation omitted).  The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant.  *Van Gemert*, 444 U.S. at 478.  As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole."  *Sunbeam*, 176 F. Supp. 2d at 1333 (citing *Van Gemert*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").  Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature.  *See, e.g.*, *Mashburn*, 684 F. Supp. at 687; *see also Deposit Guar. Nat'l Bank v. Rope*, 445 U.S. 326, 338-39 (1980).  Adequate compensation promotes the availability of counsel for aggrieved persons:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear . . . .  We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law.  It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit.  It is an experience in which few of us have participated.  The dimensions of the undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985).

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement.  In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the

fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

| | | |
|---|---|---|
| (1) | the time and labor required; |
| (2) | the novelty and difficulty of the relevant questions; |
| (3) | the skill required to properly carry out the legal services; |
| (4) | the preclusion of other employment by the attorney as a result of his acceptance of the case; |
| (5) | the customary fee; |
| (6) | whether the fee is fixed or contingent; |
| (7) | time limitations imposed by the clients or the circumstances; |
| (8) | the results obtained, including the amount recovered for the Clients; |
| (9) | the experience, reputation, and ability of the attorneys; |
| (10) | the "undesirability" of the case; |
| (11) | the nature and the length of the professional relationship with the clients; and |
| (12) | fee awards in similar cases. |

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775).  The Eleventh

Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.  As applied, the *Camden I* factors support the requested fee.

### 1.    The Claims Against Defendant Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable.  Hiraldo Decl. ¶ 24.  Class Counsel devoted substantial time to investigating the claims against Defendant.  *Id.* Class Counsel also expended resources researching and developing the legal claims at issue.  *Id.*  Substantial time and resources were also dedicated to conducting written discovery. *Id*.  As is evident by the docket, the case was vigorously contested during the time before Settlement.  *Id.*

Settlement negotiations and preparing for mediation consumed further time and resources. Hiraldo Decl. ¶ 25.  In addition, significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order.  All of this work consumed a substantial amount of time. *Id*.

Class Counsel's coordinated work paid dividends for the Settlement Class.  Each of the above-described efforts was essential to achieving the Settlement before the Court.  The time and resources devoted to this Action readily justify the requested fee.

### 2.    The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.

Class Counsel achieved a settlement that confers substantial monetary benefits to the Settlement Class despite the hard fought litigation against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced."). This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.

22

Class Counsel regularly engage in complex litigation involving consumer issues, all have been class counsel in numerous consumer class action cases. Mr. Lehrman has served as class counsel in class action cases throughout the country which have recovered tens of millions of dollars for consumers. Likewise, Mssrs. Hiraldo and Shamis are experienced TCPA practitioners who have litigated several consumer class action cases, including those alleging violations of the TCPA. The *Johnson* factors confirm that the negotiated cost and attorney fee award agreed is reasonable.

### 3.     Class Counsel Achieved a Successful Result.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result. Once again, each class member who submitted a valid claim will receive a case settlement benefit of $130 from the Settlement Fund, which is well within the range of various other TCPA settlements that have been granted final approval.[3] This factor thus weighs strongly

---

[3] There have been at least eighteen approved TCPA class action settlements that provided cash or merchandise to class members less than $100. *See e.g. Spillman v. RPM Pizza, LLC*, Case No. 3:10-cv-00349 (M.D. Louisiana)(DEs 244, 245)($15 recovery per claimant); *Desai v. ADT Security Systems*, Case No. 1:11-cv-01925 (N.D. Illinois)(DEs 240 and 243) ($47 recovery per claimant); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (N.D. Illinois)(DE 74) ($28.13 recovery per claimant); *Paldo Sign and Display Company v. Topsail Sportswear*, Case No. 1:08-cv-05959 (N.D. Illinois)(DE 116) ($42 recovery per fax); *Adams v. AllianceOne Receivables Management, Inc.*, 3:08-cv-00248 (S.D. California) ($40 recovery per claimant)(DEs 116 and 137; *Agne v. Papa John's International, et al.*, 2:10-cv-01139 (W.D. Washington)(DE 389) ($50 recovery plus $13 merchandise per claimant); *Bellows v. NCO Financial Systems, Inc.*, 3:07-cv-01413 (S.D. California)(DE 38 at 6) ($70 recovery per claimant); *Clark v. Payless ShoeSource, Inc.*, 2:09-cv-00915 (W.D. Wash.)(DEs 61 at 3; 72) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, 2:09-cv-00911 (W.D. Wash.)(DE 114, ¶ 11) ($40 or $80 merchandise certificate per claimant); *Hovila v. Tween Brands, Inc.*, 2:09-cv-00491 (W.D. Wash.)(DE 12, ¶ 12) ($20 or $45 merchandise certificate); *In re Jiffy Lube International, Inc. Text Spam Litig.*, 3:11-MD-02261 (S.D. Cal.)(DEs 90-1 at 7-8; 97) ($15); *Kazemi v. Payless ShoeSource, Inc. et al.*, 3:09-cv-05142 (N.D. Cal.)(DE 94, ¶ 10) ($15 merchandise certificate); *Kwan v. Clearwire Corp.*, 2:09-cv-01392 (W.D. Wash.)(DEs 201) ($53 per call); *Lemieux v. Global Credit & Collection Corp.*, 3:08-cv-01012 (S.D. Cal.)(DE 46, at 4) ($70 recovery per claimant); *Malta v. Freddie Mac & Wells Fargo Home Mortgage*, 3:10-cv-01290 (S.D. Cal.)(DE 91 at 5) ($85 recovery per claimant); *Sarabi v. Weltman, Weinberg & Reis Co.*, 3:10-cv-01777 (S.D. Cal.)(DE 42 at 6) (48 recovery per claimant); *Steinfeld, et al. v. Discover Financial Services, et al.*, 3:12-cv-01118 (N.D. Cal.)(DE 65 at 17) ($47 recovery per claimant); and *Wojcik v. Buffalo Bills, Inc.*, 8:12-cv-02414 (M.D. Fla.)(DE 77 at 5) ($58-$75 recovery per claimant).

in favor of approving the cost and fee amount.  As shown above, this recovery is significant when compared to many other TCPA cases that provided a portion of what each claimant will receive. Lehrman Decl. ¶ 28.

### 4.      The Claims Presented Serious Risk.

This case involved difficult substantive issues which presented a significant risk of nonpayment.  First, many TCPA claims, including the present action, require a finding that the Defendant's telephone dialing system constitutes an automatic telephone dialing system ("ATDS") under the TCPA and applicable regulations and FCC orders. The law on the ATDS issue continues to develop as the FCC recently ruled on TCPA related petitions in its July 10, 2015 Order. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (July 10, 2015).

The Settlement Fund is significant given Defendant's limited financial resources. Hiraldo Decl., ¶ 39. Defendant's limited financial resources presents additional risk for the pursuit of the subject claims.  Accordingly, Defendant's willingness to make such a significant amount available to the Settlement Class supports a finding that the Agreement is a just and fair resolution of the claims in this litigation.

In addition, the ability to recover costs and fees in this case has always been contingent on a successful outcome and substantial recovery.  The TCPA does not provide for an award of attorney fees to a prevailing plaintiff.  The only way to recover a fee is to be part of a large recovery. Counsel had to advance the costs and fees, and risked receiving nothing in return. Lehrman Decl., ¶ 29. This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are

extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp.2d 1334 at 1339 (S.D. Fla. 2007).   Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees."   *In re Checking Acc't Overdraft Litig.*, 830 F. Supp.2d at 1364, *quoting In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1335.   Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007), *citing Pinto,* 513 F. Supp.2d at 1339.

The novelty and contingent nature of the case demonstrate the undesirability of the case. Few lawyers will take on a lawsuit that consumes significant attorney time, involves uncertain questions, and requires the lawyers to advance out-of-pocket costs, and risk getting paid nothing.

Although Class Counsel were able to achieve an excellent result for the class, achieving this outcome was not certain when they agreed to take the case, and thus these factors all weigh in favor of approving the mediated cost and fee amount. *See In re Checking Account Overdraft Litig*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight"), *citing Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976).

### 5.   Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment.   Lehrman Decl. ¶ 30.   That risk warrants an appropriate fee.   Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees."   *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548); *see also Cooper v. Nelnet, Inc.*, No. 6:14-cv-314-Orl-37DAB, 2015 U.S. Dist. LEXIS 100350, at *5

(M.D. Fla. July 31, 2015) ("the Court recognizes that it is not easy for consumers to obtain counsel in TCPA actions, especially considering that the work for a class action is typically done on a contingent basis and that TCPA law is relatively new."); *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment).

Despite Class Counsel's effort in litigating this Action, we remain completely uncompensated for the time invested in the Action, in addition to the expenses we advanced. Lehrman Decl. ¶ 31. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

### 6. The Requested Fee Comports with Fees Awarded in Similar Cases.

Counsel's requested fee plus expenses not to exceed Three Hundred Ninety Thousand Dollars ($390,000.00), to be paid by MRA from the Settlement Fund, is within the range of fees typically awarded in similar cases. Lehrman Decl. ¶ 32. Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee is within the range of reason under the factors listed by the *Camden I*. "[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark.'"[4] *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (emphasis added) (awarding fees equaling 31.33%); *Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7-8 (S.D. Fla. Nov. 29, 2017) ("Class Counsel is hereby awarded $2,666,400.00 in attorneys' fees from the gross

---

[4] *See also* 1 *Court Awarded Attorney Fees*, ¶ 2.06[3], at 2-88 (Matthew Bender 2010) (noting that, "when appropriate circumstances have been identified, a court may award a percentage significantly higher" than 25%); 4 *Newberg on Class Actions*, § 14:6, at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

Settlement Fund, consisting of 33.33% of the Settlement Fund. This percentage accurately reflects the percentage figures of contingency fees attorneys commonly received in the Southern District of Florida and the Eleventh Circuit…"); *Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. April 19, 2005) (awarding fees of 33.33 % of settlement); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 U.S. Dist. LEXIS 27228, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (awarding fees of 33.33 % of settlement); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33 % of settlement).[5]

     Class Counsel's fee request of approximately 31.55 % of the Settlement Fund, falls within the range of the private marketplace, where contingency fee arrangements often approach or equal

---

[5] *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (35.1%); *see also Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) (finding that 33% is the norm, and awarding 38% of settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (36%); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8 %); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (45%); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 1106 (2d Cir. 1980) (approximately 53%).

forty percent of any recovery.  *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases").  And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery."  *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring); *see also Kirchoff v. Flynn*, 786 F.2d 320, 323, 325 n.5 (7th Cir. 1986) (noting "40 percent is the customary fee in tort litigation"); *In re Public Serv. Co. of N.M.*, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.").

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See Gottlieb*, 2017 U.S. Dist. LEXIS 197382, at *7-8 (granting fees of $2,666,400.00 in a TCPA class action, which consisted of 33.33% of the settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund); *De Los Santos v. Millward Brown Inc.*, 13-cv-80670-DPG (S.D. Fla. 2015) (granting fees and costs amounting to one-third of gross recovery); *Matthew Benzion v. Vivint, Inc.*, 12-61826-CIV-ZLOCH (S.D. Fla. 2015) (grating fees and costs amounting to one-third of the $6,000,000 settlement fund); *In re Capital One Tel. Consumer Prot. Act Litig*, 2015 U.S. Dist. LEXIS 17120, *62 (N.D. Ill. Feb. 12, 2015) (analyzed dozens of TCPA class settlements throughout the country and determined that a risk adjusted fee structure would provide a fee of

36% for the first $10 million and then lower percentages after that); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 U.S. Dist. LEXIS 91448, at *5 (M.D. Fla. June 5, 2017) (granting fees and costs amounting to 30% of the $3.75 million dollar fund).[6]

Consequently, the attorneys' fee requested is appropriate and should be awarded.

### 7.     The Expense Request Is Appropriate.

Class Counsel also request reimbursement for a total of $4,193.75 in litigation costs and expenses.  Lehrman Decl. ¶ 33.  This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution of the Action and the Settlement.  *Id*.  Specifically, these costs and expenses consist of: (1) $3,593.75 in mediator's fees and expenses and (2) $600.00 in general litigation costs, including court filing fees and travel.  *Id.*  These out-of-pocket expenses were reasonably and necessarily incurred and paid in furtherance of the prosecution of this Action.  *Id.*

### VII.   CONCLUSION

Producing the Settlement Fund, including $390,000 for fees and costs associated with the Notice Program and Settlement Administration represents a very good result given the obstacles confronted in this Action.  The Settlement more than satisfies the fairness and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3). Further, Class Counsel's request for a Service Award for the Plaintiff and the application for

---

[6] *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third fee payment of distributed fund); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving payment of one-third of common fund); *Paldo Sign and Display Company v. Topsail Sportswear, Inc.*, No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv- 05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (Dkt. No. 100) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146).

attorneys' fees and expenses is reasonable under all the circumstances.  The fee request satisfies the guidelines of *Camden I* given the results achieved, the notable litigation risks, the extremely complicated nature of the factual and legal issues, and the time, effort and skill required to litigate claims of this nature to a satisfactory conclusion.

Accordingly, Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as **Exhibit D;** (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Desiree Marengo as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph 14 of the Agreement; (5) approve the requested Service Award in the amount of $7,500; (6) award Class Counsel attorneys' fees, costs and expenses in the amount of $390,000, to be paid out of the Settlement Fund; and (7) enter Final Judgment dismissing the Action with prejudice.

Dated:  March 2, 2018                         Respectfully submitted,

                                              */s/ Seth M. Lehrman*
                                              Seth M. Lehrman (FBN 132896)
                                              E-mail: seth@epllc.com
                                              EDWARDS POTTINGER, LLC.
                                              425 North Andrews Avenue, Suite 2
                                              Fort Lauderdale, FL 33301
                                              Telephone: 954-524-2820
                                              Facsimile: 954-524-2822

                                              Manuel S. Hiraldo (FBN 030380)
                                              E-mail: mhiraldo@hiraldolaw.com
                                              HIRALDO P.A.
                                              401 E. Las Olas Boulevard, Suite 1400
                                              Fort Lauderdale, FL 33301
                                              Telephone: 954-400-4713

                                              Andrew J. Shamis (FBN 101754)
                                              E-mail: efilings@sflinjuryattorneys.com
                                              SHAMIS & GENTILE, P.A.

14 NE 1st Avenue, Suite 400
Miami, FL 33132
Telephone: 305-479-2299

*Attorneys for Plaintiff Desiree Marengo*
*and all others similarly situated*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 2, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Seth M. Lehrman*
Seth M. Lehrman

31